## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ARLENE ROSARIO and
GEANENE SILAS,**

            **Plaintiffs,**

**v.**                                        **Case No: 6:20-cv-352-WWB-EJK**

**PROGRESSIVE CASUALTY
INSURANCE COMPANY,**

            **Defendant.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on the following Motions:

- Defendant's Amended Motion for Summary Judgment (Doc. 125); and

- Defendant's Motion for Decertification (Doc. 135) (the "Motions).

On June 23, 2022, Plaintiffs filed their response in opposition to the Motion for Summary Judgment (Doc. 131), and Defendant thereafter filed its reply (Doc. 134). On August 16, 2022, Plaintiffs filed their response in opposition to the Motion for Decertification. (Doc. 136.) Thus, the Motions are ripe for review. Upon consideration of the briefing and the exhibits thereto, I respectfully recommend that the Motion for Summary Judgment be denied and the Motion for Decertification be denied.

## I.    BACKGROUND

Plaintiffs Arlene Rosario and Geanene Silas, on behalf of themselves and others similarly situated, initiated this collective action against Defendant Progressive

Casualty Insurance Company pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. (Docs. 1, 51.) Plaintiffs are Medical Rep Associates and Medical Rep Intermediates ("Medical Reps") employed by Progressive to investigate and process "no fault" personal injury protection ("PIP") claims. (Docs. 125 ¶¶ 1, 2; 131 ¶ 1, 2.) A Medical Rep Associate is expected to "review[] and research[] the policy contract, regulation, injury causation/mechanism of injury to make coverage decisions," "interpret[] medical records," "conduct[] research to better understand medical records," "review[] newly assigned claim files," "interpret[] policy and state laws in order to make accurate coverage decisions," "maintain[] diaries and the completion of accurate and comprehensive file documentation," "develop[] and execute[] action plans around coverage, fraud, injury causation and subrogation issues," and "complete[] any and all tasks a file may need to bring the file towards resolution." (Doc. 125-2 at 100–101.) Similarly, Medical Rep Intermediates "have the same basic responsibilities as Medical Rep Associates," but are "responsible for adjusting even more complex claims." (Doc. 125 ¶ 6.)

Defendant moves for summary judgment, arguing that Plaintiffs "and all other members of the collective" are exempt employees under the FLSA's administrative exemption. (Doc. 125 at 1–2.) Plaintiffs respond that the administrative exemption does not apply here because, as employees, Plaintiffs' job duties and responsibilities do not meet the third criteria under the Department of Labor's definition of administrative employees. (Doc. 131 at 10.) In its Motion for Decertification, Defendant argues that in the event the Court denies summary judgment, the collective

action should be decertified because Plaintiffs' own arguments "reflect that individualized evidence, credibility and liability determinations, and individualized defenses, will be necessary to resolve each of their claims." (Doc. 135 at 2.) As such, the undersigned first considers Defendant's Motion for Summary Judgment.

## II.    STANDARD

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could impact the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the moving party shows "an absence of evidence to support the nonmoving party's case," the burden then shifts to the nonmoving party to demonstrate that there are, in fact, genuine disputes as to material facts. *Celotex*, 477 U.S. at 325; *see also Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). In determining whether a genuine dispute as to material fact exists, the Court must read the record and the evidence presented in the light most favorable to the nonmoving party. *See*

*Porter*, 461 F.3d at 1320.

### B. Motion for Decertification

In order to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are "similarly situated." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); 29 U.S.C. § 216(b). Unlike the mandatory "opt out" nature of a class action under Federal Rule 23, the FLSA provides an opportunity for employees to "opt in" to a collective action. 29 U.S.C. § 216(b). The Supreme Court has explained that the primary objectives of a § 216(b) collective action are lowering the costs to individual plaintiffs through the pooling of resources and limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity. *Hoffman La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

There is a two-step procedure for certifying an FLSA collective action: first, the notice stage, and second the decertification stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The notice stage is when "a district court determines whether other similarly situated employees should be notified." *Id.* At the decertification stage, because it typically follows discovery, the court can "make a more informed factual determination of similarity . . . and the plaintiff bears a heavier burden." *Id.* at 1261. The more legally significant differences that exist among the opt-in plaintiffs, the "less likely it is that the group of employees is similarly situated." *Id.*

When deciding a motion to decertify, courts consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various

defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *King v. CVS/Caremark Corp.*, No. 07-21824-CIV, 2008 WL 5973490, at *1 (S.D. Fla. 2008); *see also Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001). Although declining to specify how much stricter the second stage is or exactly how plaintiffs' burden differs, the Eleventh Circuit in *Anderson v. Cagle's, Inc.*, notes that although the FLSA does not require potential class members to hold identical positions, the "similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.' Otherwise, 'it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (internal citations omitted) (noting, for example, that because all named plaintiffs were unionized and only some opt-in plaintiffs were, the collective bargaining agreement defense was applicable to some but not others).

During the second stage, if the district court determines that the plaintiffs are in fact "similarly situated," the action proceeds to trial as a representative action. *Hipp*, 252 F.3d at 1218. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice, and the case proceeds on the individual claims of the original plaintiffs. *Id.*

III.   **DISCUSSION**

**A. Motion for Summary Judgment**

The FLSA requires employers to pay employees at time-and-a-half for any time worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1). However, the Act specifically exempts from this requirement "any employee employed in a bona fide executive, administrative, or professional capacity . . ." *Id.* § 213(a)(1). Under the Department of Labor ("DOL") regulations interpreting the exemptions, an employee falls under the administrative exemption from the overtime-pay requirement if they (i) receive a salary or fee at a rate of $684 per week or more; (ii) are primarily employed in office or non-manual work directly related to the employer's general business operations or customers; and (iii) exercise discretion and independent judgment with respect to matters of significance, as their primary duty. 29 C.F.R. § 541.200(a). FLSA exemptions must be given a "fair reading" and not a "narrow" one. *Encino Motorcars, LLC v. Navarro, et al.*, 138 S. Ct. 1134, 1142 (2018).

Defendant argues that Plaintiffs satisfy the first two prongs of the administrative exemption because Progressive paid Plaintiffs a weekly salary exceeding $684 per week, and Plaintiffs' primary duty is office work directly related to Progressive's general business operations. (Doc. 125 at 20–22.) In their response to the Motion, Plaintiffs do not dispute that they meet the first two of the three criteria for this administrative exemption. (*See* Doc. 131.) Thus, the undersigned considers only the third prong, whether Plaintiffs, as their primary duties, exercised discretion and independent judgment with respect to matters of significance.

### i. Exercise of Discretion and Independent Judgment

The third prong of the administrative exemption provides that an employee's primary duty must involve "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). The "exercise of discretion and independent judgment," generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* at § 541.202(a). The term "discretion and independent judgment," however, does not require that the decisions at issue have a finality that goes with unlimited authority and a complete absence of review. *Id.* A decision made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action, and the fact that an employee's decision may be subject to review and that upon occasion the decision is revised or reversed does not necessarily mean that the employee is not exercising discretion and independent judgment. *Id.* The regulations also provide that the exercise of discretion and independent judgment "must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources," and "does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." *Id.* at § 541.202(e).

Defendant argues that because every claim is unique, Plaintiffs must adjust what they do for each claim. (Doc. 125 at 23.) Defendant states Plaintiffs must "determine whether the claimant and loss are covered by the policy at issue," "interview

Progressive customers and others, tailoring their questions to specific situations and listening actively to be able to react on the spot and follow up on information provided during the calls," make credibility determinations, evaluate vehicle damage and medical records, and evaluate claims for red flags. (*Id.* at 23–24.) Plaintiffs counter that their jobs do not meet the administrative exemption, arguing that the cases Defendant cites all involve higher-level insurance adjusters, and that their own duties are more similar to a DOL Opinion Letter discussing the role of non-exempt junior-level claims adjusters. (Doc. 131 at 13–14, 16.)

The regulations provide that insurance claims adjusters generally meet the duties requirements for the administrative exemption if their duties include activities such as "interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation." 29 C.F.R. § 541.203(a).

Here, the undersigned finds that, in viewing the record and the evidence in the light most favorable to Plaintiffs, there is a genuine dispute of material fact as to whether Plaintiffs exercise discretion and independent judgment in their roles, and thus, summary judgment should be denied. Defendant argues that the Medical Reps perform several activities that would generally meet the duties requirements for the administrative exemption, and notes that the regulation "does not require the adjuster to perform each and every activity listed." *In re Farmers Ins. Exch., Claims Representatives'*

*Overtime Pay Litig.*, 481 F.3d 1119, 1129 (9th Cir. 2007). It is undisputed that Medical Reps interview claimants, witnesses, and physicians; gather records and statements to verify factual information; and evaluate and make recommendations regarding whether a claim is covered. (Docs. 125 ¶¶ 8, 11, 18; 131 ¶¶ 11, 13.) However, questions remain as to how much discretion and independent judgment Plaintiffs are able to exercise in these activities.

For example, Defendant contends that Medical Reps must "tailor their questions to specific situations and listen actively to be able to react on the spot," citing deposition testimony in which they stated they changed their "tone" or "style" with claimants. (Doc. 125 ¶ 12.) On the other hand, Plaintiffs cite deposition testimony to note that "[r]egardless of communication style by the [Medical Reps], verification of factual information needed to properly process a claim did not change." (Doc. 131 ¶ 11.) Defendant does not cite to any case law that establishes that a change of tone or style constitutes the exercise of discretion and independent judgment so as to subject Plaintiffs to the exemption. Moreover, the fact that Medical Reps interviewed claimants and witnesses does not automatically subject them to the exemption.

In fact, the same activities that Defendant points to as evidence of discretion and independent judgment are also highlighted in a January 7, 2005, DOL Opinion Letter in which non-exempt junior-level claims adjusters with similar tasks are discussed. While the junior-level claims adjusters in the letter "do not review policies to determine whether there is coverage as all state employees serviced by the Office are covered," they "conduct[] telephone interviews from a list of prepared questions

in order to determine whether to accept or deny a workers' compensation claim for benefits," "fill[] out preprinted forms needed to make or deny payments," and "may only make payments to claimants and health care providers when such payments are clearly appropriate and not scheduled for dispute resolution." Opinion Letter, Fair Labor Standards Act, 2005 WL 330610 (Dep't of Labor Jan. 7, 2005). They "do not make determinations as to questions of liability, percentages of comparative fault, and negligence," and "may only approve a payment of indemnity benefits to a claimant without supervisory approval if the payment is under $1,500 and when these benefits are clearly appropriate based on their investigation of the facts." *Id.* Plaintiffs' duties include many of these same activities, and similarly, Medical Reps do not "determine liability, fault, or negligence" or have authority "to negotiate or make settlements," or "pay out more than the required amount." (Doc. 131 at 3–4, 15.)

Defendant compares the Medical Reps' activities to those of the claim specialists in *Julian v. Metlife, Inc.*, 2021 WL 3887763 (S.D.N.Y. Aug. 31, 2021), *leave to appeal denied sub nom. McKinney v. Metro. Life Ins. Co.*, 2021 WL 7451180 (2d Cir. Dec. 21, 2021), whom the court found made decisions that involved the exercise of discretion and independent judgment. There, while some of the tasks were the same as those expected of Plaintiffs, such as interviewing insureds and identifying red flags with respect to a claim, the claim specialists in *Julian* had several additional duties that Plaintiffs do not have. As Plaintiffs note, the claim specialists in *Julian* determined whether a claimant could "qualif[y] as disabled under their plan based on the specific facts of their case," whether a claimant should receive long-term disability benefits,

and "whether an injured employee could return to work and what, if any, accommodations would be needed at the workplace to facilitate their return." *Id.* at *7–9. While these additional activities involve the exercise of discretion and independent judgment, the Medical Reps' duties in this matter do not include these activities, and there are disputed issues as to whether Medical Reps exercised discretion and independent judgment in the activities they did perform.

Although Defendant points to circuit courts "across the country" that have found the administrative exemption applies to insurance claims processing employees, Defendant acknowledges that "each case must be evaluated based on its own facts," and notably, all of the examples Defendant points to include additional facts such that there could be no dispute that the employees in question exercised discretion and independent judgment. (Doc. 125 at 18–19.) Plaintiffs distinguish these facts in their response. (*See* Doc. 131 at 16–18.) For example, Defendant compares the Seventh Circuit's decision in *Roe-Midgett v. CC Servs., Inc.*, to the instant situation, but there, the employees in question would "investigate, adjust, and settle with only minimal oversight," spend "most of their time in the field," appraise damage, "check for fraud, decide whether to repair or replace parts, negotiate with body shops, and settle claims up to $12,000." 512 F.3d 865, 872–75 (7th Cir. 2008). These activities go far beyond what is required of the Medical Reps, as Medical Reps do not have settlement authority, do not conduct on-site investigations, and do not negotiate loss cost. (Doc. 131 at 17.) Likewise, Defendant's comparison of Medical Reps to the employees in *Robinson-Smith v. Gov't Emps. Ins. Co.*, is inapposite because there, the auto damage

adjusters' primary duty consisted of "assessment, negotiation and settlement of automobile damage claims," and notably, "[a]lthough the parties disagree[d] on how much discretion the adjuster exercises, no one disputes that he exercise[d] 'some.'" 590 F.3d 886, 893–94 (D.C. Cir. 2010). Here, there are multiple factual disputes regarding the degree, if any, of discretion and independent judgment, and Plaintiffs have vehemently disputed that the Medical Reps exercise *any* discretion and independent judgment in their role.

Defendant correctly notes that the Supreme Court in *Encino* rejected the "principle that exemptions to the FLSA should be construed narrowly[,]" stating that courts "have no license to give the exemption anything but a fair reading." *Encino Motorcars, LLC*, 138 S. Ct. at 1142. However, the undersigned still finds the cases Plaintiffs rely on instructive, even in giving the exemption a fair reading. Plaintiffs contend their activities are similar to the plaintiffs in *Hollinger*, where:

> (1) their telephonic claimant interviews and the bulk of correspondence was rote, and they rarely 'interviewed' physicians or employers; (2) they did not visit locations related to insurability issues; (3) they did not inspect property damage or prepare damage estimates; (4) they never negotiated settlements with the claimants because such matters were referred to settlement specialists, or required immediate supervision and mere conveyance of a non-negotiable offer authorized by a supervisor; (5) they did not set reserve amounts related to their claims; and (6) they had no involvement in litigation that might arise from the claims they handled. Finally, the parties dispute what percentage of the Plaintiffs' work days were spent on mere "clerical" duties, what percentage of recommendations concerning claims were accepted by Plaintiffs' supervisors, and to what extent Plaintiffs' claims handling and decisions

were controlled by Hartford's detailed policies and procedures.

*Hollinger v. Hartford Fire Ins. Grp.*, No. 6:11-cv-59-Orl-19TBS, 2012 WL 12864186, at *8 (M.D. Fla. Dec. 10, 2012).

The undersigned agrees with Plaintiffs that, upon review of the evidence, the job duties of a Med Rep are "more closely aligned with the job duties of the plaintiffs in *Hollinger*." (Doc. 131 at 11.) Plaintiffs also assert that most of the Medical Reps' time is "occupied by customer service and clerical duties," and Defendant does not bring evidence showing what percentage of the workday was spent on such clerical duties.[1] (Doc. 131 ¶ 7.) In sum, there are genuine issues of material fact as to whether the Medical Reps' primary duties include the exercise of discretion and independent judgment with respect to matters of significance. A reasonable factfinder could rule against Defendant and find that "Plaintiffs simply applied well-established techniques or procedures developed by [Defendant] within 'closely prescribed limits' set by [Defendant] to determine 'the correct response to an inquiry or set of

---

[1] In its reply, Defendant states that a court may disregard an affidavit submitted "solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). Defendant argues the affidavits submitted by Plaintiff in connection with their response should be disregarded because they are inconsistent with Plaintiffs' prior clear deposition testimony. (Doc. 134 at 2.) However, Defendant does not point out how the affidavits *directly contradict* the deposition testimony, and the undersigned notes that the "sham affidavit rule is 'applied sparingly because of the harsh effect it may have on a party's case.'" *Bucklew v. Charter Commc'ns, Inc.*, No. 8:19-cv-2029-TPB-AAS, 2021 WL 1250772, at *1 (M.D. Fla. Apr. 5, 2021) (quoting *Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007)). As such, the undersigned does not disregard the submitted affidavits.

circumstances' . . ." *Hollinger*, 2012 WL 12864186 at *9 (quoting 29 C.F.R. § 541.704). As such, the undersigned recommends denying Defendant's Amended Motion for Summary Judgment and allowing a jury to resolve the disputed issues of fact.

### B. Motion for Decertification

Defendant also brings the instant Motion for Decertification, arguing that "in the event the Court denies summary judgment, it should decertify this collective action and require the opt-in Plaintiffs to proceed individually." (Doc. 135 at 3.) Plaintiffs respond that Defendant fails to meet the standard for decertification and that the Motion should be denied. (Doc. 136.) As noted above, in considering a motion to decertify, courts analyze the following three factors "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *King*, 2008 WL 5973490 at *1; *see also Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001). The undersigned discusses each in turn.

#### i. *Disparate Factual and Employment Settings*

The first factor the court considers in reviewing a motion to decertify an FLSA collective class is whether the plaintiffs have disparate factual and employment settings. *Morgan*, 551 F.3d at 1261. In determining whether individual plaintiffs have disparate factual and employment settings, the Court examines whether plaintiffs' job titles were the same, whether their geographic location was the same, the time period of the alleged violations, whether the same policies and practices were implemented

with respect to the plaintiffs by the same decision-maker and in the same manner, and to what extent the alleged violations are similar between plaintiffs. *Whineglass v. Smith*, No. 8:11-cv-2784-T-23TGW, 2013 WL 2237841, at *7 (M.D. Fla. May 21, 2013).

As a preliminary matter, the undersigned agrees with Plaintiffs that Defendant "takes great liberty to re-argue" the Motion for Summary Judgment in its Motion for Decertification. (Doc. 136 at 2.) Yet, the same arguments that Defendant advances in support of its Motion for Summary Judgment bolster Plaintiffs' contention that there are few disparate factual and employment settings of the Medical Reps. As Defendant states, "Plaintiffs' deposition testimony, job descriptions, ClaimStation notes, and performance evaluations all confirm their primary duties were to independently investigate, evaluate, and render decisions on whether to approve or deny claims under Florida's personal injury protection ("PIP") statute[.]" (Doc. 135 at 1.) Defendant then repeats several of the tasks it states Plaintiffs performed and contends that "job descriptions for the Medical Rep Associate and Medical Rep Intermediate positions reflect many of these exempt tasks." (*Id.* at 6.)

Thus, Defendant's own argument focusing on the similarities in Medical Reps' job duties and activities, regardless of their position as Medical Rep Associate or Medical Rep Intermediate, now belies their claim that Plaintiffs have such disparate employment circumstances so as to require decertification. Moreover, the Motion for Decertification suffers from the assumption that the motion for summary judgment can only be denied because certain, select Medical Reps "consciously chose to disregard Progressive's expectations and to perform a different job than the one they

were hired to perform – not that their jobs did not require the use of independent judgment and discretion." (Doc. 135 at 2.) Defendant states that because "the class-wide evidence supports the exemption, Plaintiffs rely on individualized issues and the experience of a few Plaintiffs to suggest that none did exempt work." (*Id.* at 6.) But the undersigned has found that Defendant failed to prove, for summary judgment purposes, that the class-wide evidence supports the exemption. To the contrary, Plaintiffs presented class-wide evidence to dispute Defendant's claim that the administrative exemption is applicable here. As such, the contention that Plaintiffs rely on individualized issues is not well-taken.

Apart from variations on the theme of its motion for summary judgment, Defendant argues that Plaintiffs' "alleged disparate employment circumstances require decertification" because "courts recognize application of the administrative exemption requires a highly individualized analysis." (Doc. 135 at 16.) Defendant cites the DOL's regulations, which "instruct courts to perform 'a case-by-case assessment to determine whether [a given plaintiff's] duties meet the requirement for exemption'" concluding that "[t]his highly-individualized analysis is inconsistent with collective treatment." (*Id.* at 17) (citing 69 Fed. Reg. 22122, 22144 (Apr. 23, 2014)). However, this argument is inapposite because the regulations direct a case-by-case assessment in specifying that one cannot rely on the *job title* of "claims adjuster" alone to conclude that insurance claims adjusters generally meet the duties requirements for the administrative exemption. *See* 69 Fed. Reg. 22122, 22144 (Apr. 23, 2014). Thus, the undersigned finds that these DOL regulations do not weigh toward decertifying a class.

The additional case law that Defendant cites is likewise unpersuasive. For example, Defendant cites to a decision where, based on plaintiffs' declarations expressing "different day-to-day experiences, different approaches, and different expectations" the court denied conditional class certification. *Yoder v. Fla. Farm Bureau*, 446 F. Supp. 3d 956, 961 (N.D. Fla. 2020). Notably, the Court has already granted conditional certification in this matter (Docs. 55, 57), and here, the Medical Reps' declarations are nearly identical in describing their job experiences. (*See* Docs. 131-4– 11.) Defendant also cites to *Bradford v. CVS Pharmacy, Inc.*, where the court found that individualized inquiries would be inevitable where some plaintiffs were responsible for managing "market investigators," with one plaintiff even overseeing "the entire market investigator program in Detroit, Michigan," while other plaintiffs did not manage any. 308 F.R.D. 696, 699 (N.D. Ga. 2015). Such degree of variation in job responsibilities is absent here.

Defendant also contends that "classifying a group of employees as exempt is *not* a basis for certification," but again, the cases it relies on from this circuit are distinguishable. (Doc. 135 at 20.) Both *Herrera v. Mattress Firm, Inc.*, and *Palacios v. Boehringer Ingelheim Pharms., Inc.*, were decided at the conditional certification stage, and in *Herrerai*, the court found that the consents filed by class members were "devoid of any information regarding what kind of payroll scheme the opt-in class members were subject to," while in *Palacios* the court noted that the plaintiff failed to "put forth any arguments suggesting that she and the putative class will rely on common evidence

to prove that each putative plaintiff is due overtime because he or she falls outside every relevant exemption." *See Herrera v. Mattress Firm, Inc.*, No. 17-22048-CIV, 2017 WL 4270619, at *6 (S.D. Fla. Sept. 26, 2017); *Palacios v. Boehringer Ingelheim Pharms.*, Inc., No. 10-22398-CIV-UU, 2011 WL 6794438, at *6 (S.D. Fla. Apr. 19, 2011). Here, Plaintiffs have specified that all Medical Reps are subject to the same payroll policy issues and have put forth arguments that they will rely on common evidence.

Plaintiffs bring evidence that all Plaintiffs were "Medical Representatives" in the state of Florida processing PIP and MedPay claims. (Doc. 136 ¶¶ 1, 3.) Medical Reps "receive the same training regarding Progressive requirements," and "gather records and statements to verify facts and information to ensure a claim meets Progressive's contractual requirements and state statutes to extend (approve) coverage." (*Id.* ¶¶ 4, 6.) Although Medical Reps had different supervisors, Plaintiffs assert that "supervisors' style did not change the way claims were processed," and that everyone "had to elevate denials to their supervisor, no matter their tenure." (Doc. 131 ¶¶ 17, 27.) The Medical Reps also state that the majority of their time "was occupied by customer service and clerical duties as the [Med Rep] position is very customer service oriented," that they did not investigate liability, and "were not required to have knowledge pertaining to theories of liability." (*Id.* ¶¶ 7, 9.) Medical Reps "did not have a choice but to comply with the Insurance Policy/Contract's terms, conditions, exclusions, Florida PIP Statutes, and Progressive's procedures." (*Id.* ¶ 13.) With respect to the alleged violations, Plaintiffs state they "were paid a salary and were not paid overtime pay for hours worked over forty (40) hours per week," which they

contend violates the FLSA. (Doc. 136 ¶ 5.) As such, Plaintiffs, although not identical, are factually similar enough such that this factor weighs in favor of proceeding as a collective class.

### ii. Defenses

The second factor the courts consider when determining whether an FLSA class should be decertified is the defenses available to the defendants. *Morgan*, 551 F.3d at 1261. "[T]he district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly." *Id.* at 1262.

Defendant argues that while it "contends all Plaintiffs satisfy the requirements of the administrative exemption," the availability of "individualized defenses further weighs in favor of decertification." (Doc. 135 at 21.) Defendant states that because "some Plaintiffs deny performing the duties expected of the position," it must "build a separate defense for each such Plaintiff." (*Id.*) To do this, Defendant "will present evidence demonstrating the testimony some Plaintiffs offered about their job duties is categorically false and contrary to the work they actually performed." (*Id.* at 22.) Defendant also expects to present individualized evidence as to whether each Plaintiff worked over 40 hours per week. (*Id.*) Plaintiffs respond that Defendant has admitted that the "issue in this case is whether Plaintiffs are exempt from overtime under the FLSA's 'administrative employee' exemption," a defense that would be applicable to all Plaintiffs in the action. (Doc. 136 at 10) (citation omitted). Plaintiffs also note that Defendant fails to specify the individual defenses it plans to assert. (*Id.*) With regard

to the issue of individualized defenses in connection with overtime hours, Plaintiffs state that this alone does not merit decertification, and that courts in this circuit have "bifurcated collective action cases for trial purposes given that plaintiffs may have different pay rates and different overtime hours." (*Id.* at 11.)

The undersigned does not find that this factor weighs in favor of decertification. With respect to the administrative exemption defense, because plaintiffs "share common job traits," "were similarly situated," and "the fact that [Progressive] applied the [administrative] exemption across-the-board" to all the Medical Reps here, the general inquiry as to whether Plaintiffs are subject to the exemption would not be "so individually tailored to each Plaintiff as to make this collective action unwarranted or unmanageable." *Morgan*, 551 F.3d at 1263. As the undersigned recommended above, the disputed issue of whether the administrative exemption applies should be resolved by a jury, and this defense will be similar for all of the Plaintiffs here. While Defendant states it intends to conduct "an individualized review of how each Plaintiff spent his or her time at work," (Doc. 135 at 21), as this Court has previously noted, the "existence of a possible defense that is individualized and fact-specific does not preclude collective action." *Romero v. Fla. Power & Light Co.*, No. 6:09-cv-1401-Orl-36GJK, 2012 WL 12951718, at *4 (M.D. Fla. Feb. 22, 2012). Although Defendant cites to *Thomas v. Waste Pro USA, Inc.*, for support, there the Court found that "*no* volume of evidence exists showing that the Opt-In Plaintiffs were treated in the same manner across the board." *Thomas v. Waste Pro USA, Inc.*, No. 8:17-cv-2254-T-36CPT, 2020 WL 13133635, at *5 (M.D. Fla. July 6, 2020). This is not the case here, where a

large volume of evidence shows Plaintiffs were similarly situated and where the critical inquiry appears to be whether Plaintiffs "satisfy the requirements of the administrative exemption." (Doc. 135 at 21.)

With respect to the issue of whether each Plaintiff worked over 40 hours in a week, the undersigned finds that even though "not all plaintiffs may be entitled to the same amount of damages, or to any damages at all," this "does not compel decertification of a collective action." *Schumann on behalf of Tidwell v. Collier Anesthesia, P.A.*, No. 2:12-cv-347-FtM-29CM, 2017 WL 1361524, at *4 n.8 (M.D. Fla. Apr. 14, 2017) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049–50 (2016)). The undersigned agrees with Plaintiffs that this issue could be bifurcated for trial purposes. If a jury finds that Plaintiffs are subject to the administrative exemption, there would be no need to calculate damages. Thus, "it is neither efficient nor convenient to undertake damage calculations unless and until Plaintiffs have prevailed on the issue of liability." *Romero*, 2012 WL 1970125, at *7 (M.D. Fla. June 1, 2012) (bifurcating trial on the issues of liability and damages); *see also Kelley v. TaxPrep1, Inc.*, No. 5:13-cv-451-Oc-22PRL, 2015 WL 4488401, at *2 (M.D. Fla. July 22, 2015) ("[U]nless and until it is found that Plaintiffs were misclassified as exempt, the Court will not need to determine . . . the extent of Plaintiffs' damages").

### iii.  *Fairness and Procedural Concerns*

The final factor the courts consider in reviewing a motion for decertification of an FLSA class is fairness and procedural considerations. *Morgan*, 551 F.3d at 1261. Determining whether the claims can "be tried fairly as a collective action also requires

looking to the purposes of § 216(b) actions under the FLSA: (1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Id.* at 1264.

The undersigned finds that this factor weighs in favor of Plaintiffs proceeding as a collective action. Defendant argues that whether "any Plaintiff is entitled to overtime pay, and how much, turns on his or her individualized experience and alleged hours worked, and Progressive's individualized defenses." (Doc. 135 at 24.) Yet, it is "disingenuous for [Defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming that plaintiffs cannot proceed collectively to challenge the exemption." *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1352 (S.D. Fla. 2007) (quoting *Nerland et al. v. Caribou Coffee Company, Inc.*, 2007 WL 1170770 (slip op at pp.17–18, D.Minn. April 19, 2007)). The fact that Defendant has "employ[ed] this blanket classification approach" based on the similar job duties and responsibilities of all Medical Reps and moved for summary judgment as to the entire class rather than as to different opt-in Plaintiffs, indicates that it would be more efficient to resolve this exemption issue on a class basis. *Id.* The issues Defendant fears, such as awarding Plaintiffs "damages to which they are not entitled, or a smaller amount of damages than they are owed," could be avoided with bifurcation, and ultimately, could be mooted should the administrative exemption be found to apply. (Doc. 135 at 24.) Although Defendant cites to *Mathis v. Darden Restaurants* to demonstrate a collective action would not be preferable, the

circumstances there involved "thousands of different restaurants and the experiences of the tens of thousands of Opt-In Plaintiffs." *Mathis v. Darden Rests.*, No. 12-61742-CIV, 2014 WL 4428171, at \*5 (S.D. Fla. Sept. 1, 2014). The circumstances at hand are not at all comparable, and trying the pertinent issues as a collective would reduce the burden on Plaintiffs and more efficiently resolve the common issues that apply to the class.

## IV.   RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court:

1. **DENY** Defendant's Amended Motion for Summary Judgment (Doc. 125); and

2. **DENY** Defendant's Motion for Decertification (Doc. 135).

**NOTICE TO PARTIES**

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on September 2, 2022.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE