**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ARLENE ROSARIO and
GEANENE SILAS,**

        **Plaintiffs,**

v.                                                                       Case No: 6:20-cv-352-WWB-EJK

**PROGRESSIVE CASUALTY
INSURANCE COMPANY,**

        **Defendant.**

## ORDER

This cause comes before the Court on the parties' Joint Motion for Approval of Settlement (the "Motion"), filed March 23, 2023. (Doc. 174.) Upon consideration, the Motion is due to be denied without prejudice.

**I.    BACKGROUND**

Plaintiffs initiated this collective action against Defendant Progressive Casualty Insurance Company, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. (Doc. 53.) The factual allegations underlying the instant action stem from the employment of Plaintiffs and others that are similarly situated (collectively, the "Opt-In Plaintiffs"). (*Id.*) These Plaintiffs allegedly worked as "Medical Rep Associate[s] and/or Medical Rep Intermediate[s]" for Defendant. (Doc. 174 ¶ 7.) During the course of their employment, Plaintiffs allege that they worked overtime without receiving overtime pay, in violation of the FLSA. (Doc. 53 ¶ 13.)

On March 13, 2023, the parties filed a joint status report (Doc. 173) indicating that they had reached a settlement, and on March 23, 2023, the parties filed the instant Motion seeking approval of a settlement agreement (the "Agreement" or the "Settlement Agreement"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982).

## II.   STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and Section 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative

policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

## III.  DISCUSSION

The parties have agreed to the following release and waiver in their Settlement Agreement:

> **5.1** Upon the Effective Date of this Agreement and by operation of the Court's Order Granting Approval of the Settlement and upon receipt of all settlement funds due hereunder, the Representative Plaintiffs, on behalf of themselves and on behalf of all Opt-In Plaintiffs and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have fully, finally, and forever

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

released the Released Parties from all claims that were made in the Civil Action and all other claims, rights, demands, liabilities, causes of action, suits, and liens against Defendant for unpaid and/or miscalculated overtime compensation pursuant to the FLSA, including but not limited to claims for injunctive relief, liquidated damages, interest, penalties, and/or any other form of punitive damages, attorneys' fees, costs, and expenses relating to an alleged violation of the FLSA, up through March 6, 2023 (the "Released FLSA Overtime Claims").

**5.2** In addition to the Released FLSA Overtime Claims released pursuant to Section 5.1, upon their execution of the Release Form, each Representative Plaintiff and each Opt-In Plaintiff, on behalf of themselves and on behalf of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have fully, finally, and forever released the Released Parties from all wage-related claims that could have been made in the Civil Action and all other claims, rights, demands, liabilities, causes of action, suits, and liens against Defendant for unpaid overtime compensation, minimum wages, miscalculated overtime, miscalculated wages, or other compensation pursuant to any federal, state, or local wage and hour law, including but not limited to claims for injunctive relief, liquidated damages, interest, penalties, and/or any other form of punitive damages, attorneys' fees, costs, and expenses relating to an alleged violation of any wage and hour law, up through March 6, 2023 (the "Additional Released Claims").

**5.3** The Representative Plaintiffs, on behalf of themselves and on behalf of all Opt-In Plaintiffs and each of their heirs, representatives, successors, assigns, and attorneys, agree never to sue or to assert claims against the Released Parties in any forum for any Released FLSA Overtime Claim covered by the release in Section 5.1. Additionally, the Representative Plaintiffs and the Opt-In Plaintiffs, on behalf of themselves and on behalf of each of their heirs, representatives, successors, assigns, and attorneys, agree never to sue or to assert claims against the Released Parties in any forum for any Additional Released Claims covered by the release in Section 5.2. In the event any Representative Plaintiff or Opt-In Plaintiff brings such a

> claim against any Released Parties, the Parties agree that the Released Parties, or any one or more of them, may rely upon this Agreement to effectuate the immediate dismissal of the asserted claim(s).

(the "Release) (Doc. 174-1 ¶¶ 15.1–15.3.) "Released Parties" are defined as:

> Progressive Casualty Insurance Company, and each and any related entity, together with their parents, subsidiaries, affiliates, and, with respect to each of them, their predecessors, successors, assigns, executors, administrators, and insurers, and, with respect to each such entity, all of its past, present and future directors, officers, owners, shareholders, members, managers, employees, agents, insurers and attorneys both individually and in their capacities as directors, officers, owners, shareholders, members, managers, employees, agents, insurers and attorneys.

(*Id.* ¶ 1.16.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). Further, releases given to numerous unnamed individuals are insufficient where the parties are not identified. *Correa v. House of Glass, Inc.*, No. 6:17-cv-676-Orl-28TBS, 2017 WL 8794847, at *4 (M.D. Fla. Oct. 19, 2017) (recommending rejection of the settlement agreement in part because the release extended to numerous unnamed individuals), *denied as moot by*, 2018 WL 1801207 (denying the R&R as moot due to the parties' subsequent filing of a renewed motion for settlement approval); *Schultz v. Tartini at Rock Springs Ridge,*

*LLC*, No. 6:17-cv-815-Orl-37KRS, 2017 WL 11062615, at *2 (M.D. Fla. Sept. 22, 2017) (ordering the parties to file a renewed motion for settlement agreement approval in part because the motion did not address the breadth of the release given to defendants).

While the Release is appropriately limited to Plaintiff's FLSA claims and related wage-claims, the undersigned notes that the Release includes individuals who cannot presently be identified, and the parties have not otherwise addressed why such broad release language is necessary. "[A]n FLSA settlement agreement purporting to release nonparties who have not been adequately identified is not fair and reasonable." *Lanier v. Exec. Garden Titusville Hotel, LLC*, No. 6:18-cv-927-Orl-40KRS, 2018 WL 4762976, at *3 (M.D. Fla. Sept. 17, 2018). As written, the undersigned cannot grant approval of the Agreement based on the current form of the Release. Consequently, the Motion is due to be denied without prejudice.

## IV. CONCLUSION

Accordingly, the parties' Joint Motion for Approval of Settlement (Doc. 174) is **DENIED WITHOUT PREJUDICE**. The parties may file a renewed motion that addresses the issues set forth in this Order and a revised settlement agreement, if applicable, **on or before May 10, 2023**.

**DONE** and **ORDERED** in Orlando, Florida on April 26, 2023.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE